UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYNDA CESIRO,

                Plaintiff,

– against –

RITE AID OF NEW YORK and 1199
SEIU UNITED HEALTHCARE
WORKERS EAST,

                Defendants.

**OPINION & ORDER**

20 Civ. 10519 (ER)

Ramos, D.J.:

    Lynda Cesiro brings this hybrid action against her former employer, Rite Aid of New York ("Rite Aid"), and her former union, 1199 SEIU United Healthcare Workers East ("SEIU" or "the Union"), alleging wrongful termination and breach of the duty of fair representation in violation of the Labor Management Relations Act, along with state and county claims. Doc. 1. Now pending before the Court are Rite Aid's and SEIU's motions to dismiss. Docs. 30, 32. For the reasons set forth below, the motions are GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

    The following facts are based on the allegations in Cesiro's amended complaint, Doc. 27-1, which the Court accepts as true for purposes of the instant motion.[1] *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

---

[1] On May 14, 2021, the Court held a pre-motion conference, at which it granted Cesiro leave to file an amended complaint by May 28, 2021, and granted Defendants leave to move to dismiss the amended complaint by June 18, 2021. On June 8, 2021, Cesiro filed a letter-motion requesting an extension of time to file her amended complaint and attached the proposed amended complaint as an exhibit. *See* Doc. 27. Over Rite Aid's opposition, the Court granted the request. Docs. 28, 29. Cesiro never actually filed the amended complaint on the docket. However, both Rite Aid and SEIU direct their motions to dismiss at the amended complaint. *See* Docs. 31, 33. Accordingly, the Court will consider the proposed amended complaint to be the operative complaint.

### A. Cesiro's Employment with Rite Aid

Cesiro worked as a licensed pharmacist for Rite Aid for over twelve years until her termination in May 2019. Doc. 27-1 ¶¶ 4–5, 7. She was a union member of SEIU. *Id.* ¶ 6. As relevant to Cesiro's hostile work environment and discrimination claims, she suffered a severe ankle injury in January 2018, for which she required hospitalization, surgery, and four months' bed rest. Doc. 27-1 ¶ 35. Cesiro returned to work in May 2018 on light duty, working about once a week until September 2018. *Id.* ¶ 36. She requested reasonable accommodations including a stool, the opportunity to sit intermittently, and help from an assistant, which Rite Aid denied. *Id.* ¶¶ 37–39. Cesiro struggled with pain and discomfort as a result. *Id.* ¶ 40.

In May 2019, Cesiro was terminated abruptly and without any explanation of the basis for her termination. *Id.* ¶ 8. After her termination, Cesiro contacted SEIU to begin the grievance process, in accordance with the provisions of the Collective Bargaining Agreement ("CBA") between Rite Aid and SEIU. *Id.* ¶ 9. SEIU was her bargaining representative throughout the grievance process. *Id.* ¶ 6.

### B. The Collective Bargaining Agreement ("CBA")

According to Cesiro, the CBA between Rite Aid and SEIU historically distinguished between terminations upon consent, in which Rite Aid notified the Union of its intent to terminate an employee and obtained the Union's consent, and summary terminations, which were permitted in certain instances including alleged negligence, dishonesty, falsification of records, or illegal drug use by the employee. *Id.* ¶¶ 11–14. Pursuant to the CBA, if SEIU did not consent to termination of the employee, the matter was submitted to binding arbitration before termination could take effect. *Id.* ¶ 13. Cesiro alleges that "inherent to all terminations either on consent or summary discharge, is that such terminations must have been *for cause*," and that Rite Aid historically provided SEIU with the alleged for cause basis before the initiation of the grievance process. *Id.* ¶¶ 15–16. Cesiro alleges that prior to her termination, Rite Aid and SEIU

implemented a new CBA that amended the provisions governing termination and discharge of employees. *Id.* ¶ 17. While Cesiro's complaint refers to the CBA and outlines what she claims to be the relevant procedures governing termination, neither Cesiro's original nor amended complaint includes any version of the CBA, nor any other document containing the provisions she describes.

Along with its motion to dismiss, SEIU attached two exhibits: the CBA between Rite Aid and SEIU in effect from April 19, 2015, to April 18, 2019, and the current CBA that covers the period from April 18, 2019, to April 18, 2022, which was the agreement in effect when Cesiro was terminated.[2] *See* Docs. 34-1, 34-2. In both versions of the CBA, Article 9 governs discharge or lay-off of employees, while Article 29 governs grievance procedures. Article 9.1 of the CBA in effect at the time of Cesiro's termination provides as follows:

> The Employer shall have the right to discharge or discipline any associate for just cause. Should the Union deem itself aggrieved because of any discharge or discipline as hereinabove set forth, the dispute shall be subject to the grievance procedure, as set forth in Article 29 of this Agreement. The employer shall give the Union notice within 15 days of any suspension or termination. The time to file a grievance shall run from the time of such notice to the Union.[3]

Doc. 34-1 ¶ 9.1.

Article 29 sets out the four-step grievance procedure applicable to all disputes between and Rite Aid and SEIU. Doc. 34-1 ¶ 29.1. At Step I—the store level—within five calendar days of the event giving rise to the grievance, the employee and their Union delegate or representative raise the dispute with the store manager or district management representative. If the grievance is not resolved, at Step II, the employee submits their grievance in writing, signed by themselves or the union delegate, to the human resources

---

[2] The Court may consider the CBA as it is incorporated by reference in both the complaint and amended complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

[3] The language in Article 9.1 is identical in both the 2015–2019 CBA and the 2019–2022 CBA. *See* Docs. 34-1, 34-2.

3

manager.  Rite Aid and the Union must then meet within two weeks to attempt to resolve the matter, and the employee's grievance must be answered by Rite Aid in writing within fourteen calendar days after the meeting or thirty days after the filing of the grievance. As relevant to Cesiro's claims, a grievance concerning discharge may be initiated at Step II in the first instance.  *See id.*  If the grievance is not resolved at Step II, Step III entails a formal meeting with Rite Aid's labor relations representative.  At Step III, the employee submits their grievance in writing signed by the employee or Union representative to the labor relations representative.  Rite Aid and the Union must make best efforts to meet, and Rite Aid must respond to the grievance in writing within ten calendar days of the Step III meeting.  Any grievances not resolved at Step III may proceed to Step IV, arbitration.  Within thirty days of the Step III answer (or deadline to answer), the grieving party shall submit the grievance to arbitration, with the costs shared equally between Rite Aid and the Union.  *See id.*  Article 29.2 provides that disputes or grievances shall be instituted by either Rite Aid or SEIU, rather than by the individual employee.  Doc. 34-1 ¶ 29.2.

Cesiro alleges that she was never provided with the "for cause" basis for her termination.  Doc. 27-1 ¶ 20.  In her case, SEIU skipped the Step I process; instead, Cesiro, her Union representative, and Rite Aid met for a Step II meeting in July 2019.  *Id.* ¶¶ 21–22.  At the Step II meeting, Rite Aid did not provide Cesiro with a reason for her termination, instead directing her to review her employee file.  *Id.* ¶ 23.  SEIU agreed with Cesiro that Rite Aid should provide her with the basis of her termination after her termination and before the grievance meetings, but it did nothing to challenge Rite Aid's failure to do so.  *Id.* ¶ 24.  Despite Cesiro's requests to be informed of the for cause basis for her termination, Rite Aid did not provide her with that information, instead suggesting that it would do so during—not before—the Step III meeting.  *Id.* ¶¶ 25–26.  The Step III meeting was then rescheduled for several months due to the COVID-19 pandemic.  *Id.* ¶ 25.

SEIU represented Cesiro in the grievance process but ultimately determined not to pursue her grievance to Step IV, arbitration.[4]  *Id.* ¶¶ 27–31.  Cesiro then pursued internal SEIU administrative remedies, appealing the Union's decision not to pursue her grievance to arbitration.[5]  *Id.* ¶ 31.  On June 24, 2020, SEIU held a meeting to hear Cesiro's appeal and ultimately rejected her appeal of its decision not to arbitrate her grievance.[6]  *Id.* ¶¶ 30–31.  Cesiro alleges that SEIU's decision not to represent her in the arbitration against Rite Aid was arbitrary and discriminatory, and Rite Aid's failure to provide her with the for cause grounds for her termination was a violation of due process.  *Id.* ¶¶ 32–33.

### C. Procedural History

Cesiro filed this hybrid action on December 13, 2020, alleging wrongful termination and breach of the duty of fair representation in violation of the Labor Management Relations Act ("LMRA") against both Defendants.  Doc. 1.  Cesiro also brings hostile work environment and disability discrimination claims against Rite Aid under the New York State Human Rights Law ("NYSHRL") and the Westchester County Human Rights Law ("WCHRL").  *See* Doc. 27-1 ¶¶ 41–60.  On July 6, 2021, Rite Aid and SEIU moved to dismiss the amended complaint.  Docs. 30, 32.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to

---

[4] Neither the complaint nor the amended complaint indicates when SEIU informed Cesiro that it would not pursue her grievance to Step IV.  Although both complaints lack clarity, it appears that SEIU pursued Cesiro's grievance through Steps II and III as outlined in the CBA.  *See* Doc. 27-1 ¶¶ 21–26.

[5] The amended complaint neither attaches nor refers to SEIU's constitution or member bylaws, and thus there is no information about the process of this appeal beyond the fact that a meeting was held in June 2020, and SEIU ultimately rejected Cesiro's appeal of its decision not to arbitrate her grievance.  Doc. 27-1 ¶¶ 30–31.  Nor have any of the parties submitted such documents or any information about internal SEIU administrative processes for members.

[6] While the amended complaint is unclear, it appears that, once SEIU declined to pursue her grievance, no arbitration took place, and Cesiro's grievance ended following either Step II or Step III.  *See* Doc. 27-1 ¶¶ 21–33.

5

dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Christie's Int'l PLC*, 699 F.3d at 145. The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### III.   DISCUSSION

Rite Aid moves to dismiss Cesiro's action under Rule 12(b)(1) and 12(b)(6), alleging that the instant case is untimely and fails to state a claim.[7] Rite Aid further argues that the Court should decline to exercise supplemental jurisdiction over Cesiro's NYSHRL and WCHRL claims. *See* Doc. 31. SEIU moves to dismiss under Rule 12(b)(6), arguing that Cesiro has failed to state a plausible claim for breach of the duty of fair representation and that the plain language of the CBA does not support Cesiro's claims; in the alternative, it argues that Cesiro has not alleged that its interpretation of the CBA changed the outcome of the hearing process. *See* Doc. 33.

---

[7] Although Rite Aid moves to dismiss on both Rule 12(b)(1) and 12(b)(6) grounds, its two arguments—that Cesiro's action is barred by the statute of limitations and that her claim based on her termination is contradicted by the language of the CBA—are both grounds for dismissal under Rule 12(b)(6), rather than 12(b)(1). "A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1)." *Nghiem v. U.S. Dep't of Veterans Affs.*, 451 F. Supp. 2d 599, 602–03 (S.D.N.Y. 2006), *aff'd,* 323 F. App'x 16 (2d Cir. 2009) (citing *Ghartey v. St. John's Queens Hospital,* 869 F.2d 160, 162 (2d Cir. 1989) and *Carrasco v. New York City Off–Track Betting Corp.,* 858 F. Supp. 28, 30 (S.D.N.Y. 1994)).

### A. Timeliness

As a threshold matter, the Court addresses Rite Aid's argument that Cesiro's action is time-barred under the six-month statute of limitations applied to hybrid LMRA § 301 actions. Doc. 31 at 6. SEIU does not challenge Cesiro's complaint as untimely.

The six-month statute-of-limitations period for hybrid actions under § 301 for breach of the duty of fair representation "begins to run when the employee knew or should have known of the breach[.]" *Campbell v. Kane, Kessler, P.C.*, 144 F. App'x 127, 130–31 (2d Cir. 2005) (quoting *White v. White Rose Food*, 128 F.3d 110, 114 (2d Cir. 1997)); *see also Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 338 (E.D.N.Y. 2012). The Second Circuit has held that the time when the plaintiff "knew or reasonably should have known that such a breach" occurred controls, "even if some possibility of nonjudicial enforcement remained." *Santos v. Dist. Council of New York City, et al.,* 619 F.2d 963, 969 (2d Cir.1980)); see also *Cohen v. Flushing Hosp. & Med. Ctr.,* 68 F.3d 64, 67 (2d Cir. 1995).

Rite Aid and Cesiro do not dispute the applicable statute of limitations; rather, they dispute when her cause of action for breach of the duty of fair representation accrued.[8] Rite Aid argues that, to the extent that Cesiro's claim is based on her allegation that she did not receive notice of the reason for her termination prior to the July 2019 Step II grievance meeting and that SEIU failed to challenge the same, Cesiro knew or should have known of SEIU's alleged breach of duty as of the July 2019 meeting, approximately 18 months before she filed this action. Doc. 31 at 6–7; Doc. 40 at 6–7. Cesiro, on the other hand, makes two arguments: first, that the date her cause of action accrued was the date SEIU ultimately refused to proceed with her grievance to arbitration—presumably June 24, 2020, when the Union denied her appeal of its decision

---

[8] While SEIU initially filed a letter-motion indicating that it would move to dismiss Cesiro's action as untimely, Doc. 17, it does not now argue that the action is time-barred. *See* Docs. 33, 41. SEIU's moving papers are silent as to when Cesiro's cause of action for breach of the duty of fair representation may have accrued.

not to pursue her grievance—and second, that the statute of limitations is "tolled during the period in which grievance proceedings are being exhausted or when the union ceases representation of the plaintiff."[9]  Doc. 38 at 10–11 (citing *Galindo v. Stoody Co.* 793 F.2d 1502 (9th Cir. 1986)).  In reply, Rite Aid argues that because Cesiro's claim hinges on her assertion that it was not possible for her to receive fair representation without knowledge of the for cause basis for her termination, she may not argue that Rite Aid's "alleged failure to provide such notice did not trigger the running of the six-month statute of limitations."  Doc. 40 at 6–7.

Where a union represents the member through the entirety of the grievance process, the statute of limitations begins to run once the final disposition of that process is issued.  *See  Ghartey  v. St. John's Queens Hosp.,* 869 F.2d 160, 166 (2d Cir. 1989) (interpreting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983)).  However, "[w]here a union refuses or neglects to assist a union member, decides to stop assisting a member, or acts against the interests of a member, a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." *Id.* at 165.  As one court has put it, the "question is:  when did [plaintiff] know, or should . . . have known, that [the union was] acting in a manner adverse to [her] interests[?]"  *DeRay v. Larson*, No. 3:02-CV-2139 (JCH), 2004 WL 2211939, at *6 (D. Conn. Sept. 29, 2004).  When a union informs the employee that it will no longer represent them or pursue their grievance, the statute of limitations begins to run.  *See DeRay v. Otis Elevator Co.*, 153 F. App'x 19, 20 (2d Cir. 2005) ("the clock resumed running when the union informed plaintiff that it would not pursue his grievance, *i.e.,* on May 23, 2002. . . . [T]he plaintiff cannot invoke equitable estoppel to toll further running

---

[9] While Cesiro's brief is not clear, the Court takes her first argument to be that her cause of action accrued when SEIU denied her appeal of its decision not to proceed with her grievance to arbitration, and therefore her complaint is timely; and her second argument to be that, in the alternative, the controlling event was SEIU's initial decision not to proceed to arbitration, but that the statute of limitations was tolled while she pursued her internal appeal of that decision, and therefore her complaint is timely.

of the statute."); *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) ("the statute of limitations began to run when [plaintiff] received the Union's letter [advising plaintiff] that the Union was no longer going to proceed with his case."); *Austin v. Gen. Motors Corp.*, No. 94 Civ. 832 (A), 1995 WL 866220, at *8 (W.D.N.Y. Dec. 1, 1995) ("plaintiffs['] cause of action accrued in this case no later tha[n] April 8, 1994, when plaintiffs were informed by their local union representatives that they did not have a grievable complaint."). Accordingly, Cesiro's duty of fair representation claim accrued on the unspecified date when SEIU informed her that it would not pursue her grievance to arbitration.

However, the Court finds that the statute of limitations was tolled while Cesiro pursued her internal appeal of SEIU's decision, through June 24, 2020. The amended complaint provides no information on the steps that Cesiro took to challenge SEIU's decision not to represent her at arbitration. However, viewed in the light most favorable to Cesiro, as required on a Rule 12(b)(6) motion to dismiss, the amended complaint indicates that Cesiro was following some SEIU internal administrative process, as required to exhaust her claim for breach of the duty of fair representation prior to bringing the instant action. In such circumstances, courts in this Circuit have indicated that the statute of limitations should be tolled. *See Legutko v. Loc. 816, Int'l Bhd. of Teamsters*, 853 F.2d 1046, 1054–55 (2d Cir. 1988); *Casella v. D'Inzillo*, No. 80 Civ. 3619 (CES), 1987 WL 109101, at *3–4 (S.D.N.Y. Mar. 18, 1987) (tolling statute of limitations where plaintiff pursued internal union appeals in good faith); *Austin,* 1995 WL 866220, at *8–9. In *Legutko*, the Second Circuit held that the plaintiff employee's letter to his union challenging certain policy changes did not toll the statute of limitations under § 301 because plaintiff had sent only informal correspondence rather than following the appellate procedures established in the union constitution. 853 F.2d at 1054–55. Similarly, in *Austin*, the district court held that because the plaintiffs did not "follow the formal appellate procedure outlined in the union's constitution, . . . plaintiffs' informal letter to [the vice

9

president] at the [union] was insufficient to toll the statute of limitations on their claim." 1995 WL 866220, at *8–9. Here, the complaint includes scant information on the procedure Cesiro followed, and SEIU's constitution or bylaws are neither attached nor incorporated by reference. However, given that SEIU does not challenge Cesiro's action as untimely, the Court will assume that Cesiro did follow the appropriate SEIU internal procedures. Accordingly, Cesiro's claim is not time-barred, because it was filed within six months of June 24, 2020.

### B. Failure to State a Claim

Rite Aid and SEIU both assert that Cesiro's § 301 claim must in any event be dismissed because she has failed to plausibly plead that Rite Aid breached the CBA. Doc. 31 at 4–5; Doc. 33 at 3–6. Both Defendants argue that the plain language of Article 9 of the CBA does not support Cesiro's argument that Rite Aid's failure to provide her with the reason for her termination was a violation of the CBA, and that SEIU's failure to challenge the same was a breach of the duty of fair representation. In opposition, Cesiro argues that "the concept of for cause termination is a staple of due process . . . synonymous with notice." Doc. 38 at 7. She argues that "notice" in Article 9 of the CBA is a "customary legal term of art to refer to the 'for cause' basis of termination, not its literal non-legal meaning." *Id.* at 7–8. She further argues that because Article 9 requires Rite Aid to give "notice," rather than "notice of termination," it is clear that "notice" is being used as a term of art. *Id*. Therefore, she has stated a claim both for breach of the CBA and for breach of the duty of fair representation. *Id.* at 8–10. Notably, Cesiro cites no authority in support of her reading of the word "notice," and no support for her definition of notice as a "legal term of art." Defendants reply that the CBA is a contract, and that courts must interpret contracts according to their plain language. Doc. 40 at 3–4; Doc. 41 at 1–3.

10

The Court agrees with Defendants. The relevant provision of Article 9 unambiguously states, "The employer shall give the Union notice within 15 days of any suspension or termination." Doc. 34-1 ¶ 9.1. That plain language does not support Cesiro's reading that "notice" means that Rite Aid must inform the Union of the *grounds* for suspension or termination of an employee, merely that it must provide notice of the fact of the suspension or termination itself. Moreover, Cesiro's argument that the word "notice" by itself somehow has a different meaning from its use in the phrase "notice of termination" is nonsensical in light of Article 9's clear language that "notice . . . of suspension or termination" is required. *See* Doc. 40 at 2. "[L]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation. The court is not required to find the language ambiguous where the interpretation urged by one party would strain ... the contract language beyond its reasonable and ordinary meaning." *Deutsche Bank Sec., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 662 (S.D.N.Y. 2008) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir. 1989)). Moreover, as SEIU points out, at least one court has specifically rejected an argument that "notice" had a specific temporal meaning in a contract, determining instead that the "plain and ordinary" meaning of notice, including in legal contexts, could be found in dictionary sources: "a formal announcement, notification, or warning, especially an announcement of one's intention to withdraw from an agreement." *In re Lehman Bros. Holdings Inc.*, 541 B.R. 551, 565–56 (S.D.N.Y. 2015) (citing *American Heritage Dictionary of the English Language* 1206)).

There is no dispute that Rite Aid did in fact provide SEIU with notice of Cesiro's termination as required by Article 9.1. Thus, Cesiro has not stated a claim for breach of the CBA, and her § 301 action against both Defendants is hereby dismissed. Because the CBA language on its face does not support Cesiro's claim, the Court need not consider SEIU's further arguments that Cesiro has not stated a claim that the Union's actions were

11

arbitrary, discriminatory, or in bad faith, or that she has not sufficiently pleaded a causal connection with any injury. Doc. 33 at 5–7.

### C. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state and city law claims when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[W]hen the federal claims are dismissed the 'state claims should be dismissed as well.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))). Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional "values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise jurisdiction. *Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Supreme Court has noted that in a case where all federal claims are eliminated before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*. (quoting *Cohill*, 484 U.S. at 350 n.7). Having dismissed Cesiro's sole federal claim under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over, and dismisses, her NYSHRL and WCHRL claims.

### D. Leave to Amend

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. "Generally, '[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). However, where a plaintiff has neither requested leave to amend, nor indicated additional facts that would be added to the complaint, a court is not required to grant leave to amend *sua sponte*. *See Trautenberg v. Paul, Weiss, Rifkind,*

*Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir. 2009) ("Given that [the plaintiff] did not move for leave to replead in opposition to [the defendant's] motion to dismiss his original complaint with prejudice, the district court did not abuse its discretion by failing to grant him, *sua sponte*, leave to replead."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (finding that the district court "was under no obligation to provide [the plaintiffs] with leave to amend their complaint, much less provide such leave *sua sponte*" where they neither requested leave to amend, nor indicated additional facts that might lead to a different result).

Cesiro has already submitted an amended complaint in response to SEIU's representations at the pre-motion conference that more specificity was required as to timeliness and her claim that the Union's actions were arbitrary. *See* Doc. 27. She does not request further leave to amend in her opposition. *See* Doc. 38. Moreover, her entire claim under LMRA § 301 is based on the premise that Rite Aid violated the CBA by failing to provide her with the for cause basis for her termination. The plain language of Article 9 of the CBA contradicts that claim. Accordingly, leave to amend would be futile and is hereby denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. Cesiro's NYSHRL and WCHRL claims are dismissed without prejudice. The Clerk of Court is respectfully requested to terminate the motions, Doc. 30 and 32, and to close the case.

It is SO ORDERED.

Dated:   February 9, 2022
          New York, New York

_____
Edgardo Ramos, U.S.D.J.